*County Council of Prince George's County v. Robin Dale Land LLC, et al.*, No. 38, September Term, 2024, Opinion by Booth, J.

**PLANNING AND ZONING – SUBSEQUENT CHANGE THE IN THE LAW – MOOTNESS.**

**PLANNING AND ZONING – RIGHT TO NOTICE AND AN OPPORTUNITY TO BE HEARD PRIOR TO A REZONING.**

This case came before the Supreme Court of Maryland after 16 years of litigation between the Prince George's County Council, sitting as the District Council, and aggrieved property owners that challenged certain zoning decisions arising from a 2009 comprehensive rezoning known as a "sectional map amendment." The litigation consisted of a series of petitions for judicial review spanning more than a decade that resulted in several orders by the Circuit Court for Prince George's County and/or the Appellate Court of Maryland that reversed the District Council's zoning resolutions and remanded the cases to the District Council for further review.

The present case arises from the third remand proceeding that occurred in 2019. At that proceeding, the District Council convened a work session and adopted sectional map amendments without providing the property owners with notice or an opportunity to be heard. The aggrieved property owners petitioned for judicial review. After the circuit court reversed and remanded for further proceedings, the Appellate Court affirmed.

The Supreme Court granted certiorari to determine whether: (1) a countywide rezoning that occurred in 2021 constituted a substantive change in the law that rendered moot the property owner's assertions of error arising from the 2019 rezoning proceeding; and (2) if not, whether the District Council: (a) erred in failing to provide the property owners notice and an opportunity to be heard; and (b) failed to comply with the Appellate Court's prior remand order.

The Court affirmed the Appellate Court's judgment and held as follows:

1. The District Council's countywide rezoning was not a comprehensive rezoning or a substantive change in the law with retroactive application that vitiated the District Council's obligation to comply with judicial directives entered in cases in which it was a party. The countywide rezoning was a technical mapping exercise intended to assign zoning classifications on a countywide scale that best aligned with the zoning districts in the new zoning ordinance. This technical process did not render moot the property owners' assertions of error that they raised below in connection with the District Council's 2019 work session in which their properties were downzoned.

2. The record of the District Council's 2019 work session reflects that the District Council failed to comply with provisions of State and local law, which required notice and a public hearing. The property owners were entitled to notice and an opportunity to be heard under both State and county laws prior to their properties being downzoned. The District Council also failed to comply with the Appellate Court's prior remand order.

Circuit Court for Prince George's County
Case Nos.: CAL19-08050, CAL 19-8051,
         CAL 19-8279, CAL 19-8280
Argued: April 4, 2025

IN THE SUPREME COURT

OF MARYLAND

---

No. 38

September Term, 2024

---

COUNTY COUNCIL OF
PRINCE GEORGE'S COUNTY

v.

ROBIN DALE LAND LLC, et al.

---

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Battaglia, Lynne A.
  (Senior Justice, Specially Assigned),

JJ.

---

Opinion by Booth, J.

---

Filed: July 3, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This zoning case is before this Court after 16 years of litigation in the Circuit Court for Prince George's County and the Appellate Court of Maryland. The underlying dispute involves a 2009 comprehensive rezoning by the Prince George's County Council, sitting as the District Council, concerning two subregions of the County located in the Maryland-Washington Regional District (the "Regional District"). After the 2009 rezoning, known as the "sectional map amendment process," some aggrieved parties petitioned for judicial review, asserting various errors. The District Council has been a party to these judicial review proceedings since their inception. As we discuss more fully herein, prior cases resulted in three court-ordered remands to the District Council for further proceedings. After each remand, aggrieved property owners petitioned for judicial review. In each instance, the circuit court and/or the Appellate Court determined that the remand proceeding failed to comply with the court's remand instructions. The fourth remand order is before this Court.

In the underlying petition for judicial review, several property owners, including Respondents, MCQ Auto Servicenter, Inc. ("MCQ") and Christmas Farm, LLC ("Christmas Farm") (sometimes collectively referred to as the "Property Owners"), asserted that the District Council failed to follow the Appellate Court's instructions, as well as the notice and hearing requirements under State and local laws, when it conducted the third remand proceeding in 2019. Specifically, the Property Owners asserted that the District Council improperly downzoned their properties at a work session without giving them notice and an opportunity to be heard, and in a manner inconsistent with the Appellate Court's remand instructions in *Bazzarre v. County Council of Prince George's County*

*Maryland*, No. 1016, 2017 WL 2334472, at *2–13 (Md. Ct. Spec. App. May 30, 2017). The circuit court agreed with the Property Owners, reversed the District Council, and remanded the case once again for further proceedings. The Appellate Court affirmed the circuit court's judgment in a reported opinion. *County Council of Prince George's County v. Robin Dale Land LLC*, 263 Md. App. 1, 11 (2024). The District Council filed a petition for a writ of certiorari, which this Court granted to consider the following questions, which we have rephrased:

1. Whether a countywide rezoning that occurred in 2021 constituted a substantive change in the law that rendered moot the Property Owners' assertions of error arising from the 2019 rezoning proceeding.

2. Whether the District Council's enactment of the 2019 sectional map amendments and master plans complied with the Appellate Court's remand instructions in *Bazzarre* and the relevant provisions of the State and local laws regarding notice and the right to a hearing.

For the reasons explained below, we answer both questions "no." We hold that the District Council's 2021 countywide rezoning was not a substantive change in the law that rendered moot the Property Owners' assertions of error arising from the 2019 work session. The 2021 countywide process was not a comprehensive rezoning as described in our case law. The process, which was established by local zoning laws, and with additional limitations imposed by the General Assembly, was intended to effectuate the technical and non-substantive transition of the approximately 300,000 properties in the County located within the Regional District from the zoning districts that existed in the prior zoning ordinance to the most similar zoning districts that had been established in a new zoning ordinance. We agree with the Appellate Court that this technical, non-substantive process

2

did not render the Property Owners' assertions of error arising from the 2019 work session moot.

We further hold that the District Council's enactment of the 2019 sectional map amendments and master plans did not comply with State and local laws regarding notice and the right to a hearing or the Appellate Court's remand instructions in *Bazzarre*. Accordingly, we affirm the judgment of the Appellate Court.

Before turning to the specific contentions raised by the parties and our analysis of the same, we first provide background related to: (1) some planning and zoning concepts articulated in our case law; (2) the State enabling legislation that governs the Regional District; (3) the State public ethics laws that apply to the zoning matters at the center of the dispute; and (4) some of the pertinent governing provisions of the Prince George's County zoning ordinance.

# I

# Background

## A. Planning and Zoning Concepts

In Maryland, the General Assembly has delegated planning and zoning powers to charter and non-charter counties and municipalities. *County Council of Prince George's County v. Zimmer Dev. Co.*, 444 Md. 490, 507 (2015). When analyzing the planning and zoning authority of any local government, we often start with the State enabling legislation before looking to the local codes or ordinances. We do this because "[u]nder Maryland's

constitutional scheme, a local government's authority to regulate land use may emanate only from enabling legislation of the General Assembly." *Id.* at 504 (citing Md. Const. Art. XI).

The General Assembly has enacted enabling legislation that governs local planning and legislative processes for adopting comprehensive plans, zoning ordinances, and zoning maps. In general, counties and municipal corporations are required to adopt a comprehensive plan, which is implemented, in part, through the adoption of a zoning ordinance and zoning maps.

Because the planning and zoning concepts involved in this case are nuanced, it is useful to briefly discuss some background concepts related to planning and zoning. Although they are related, planning and zoning are separate functions. *Id.* at 505. Plans are typically broader in nature than zoning laws and "are developed to guide the implementation of land use controls and zoning in a rational way that is beneficial to the public." *Id.* at 520. "Plans are long term and theoretical, and usually contain elements concerning transportation and public facilities, recommended zoning, and other land use recommendations and proposals." *Mayor & Council of Rockville v. Rylyns Enters., Inc.*, 372 Md. 514, 529 (2002) (footnote omitted). "In the abstract, a comprehensive plan is more than a detailed zoning map and should apply to a substantial area, be the product of long study, and control land use consistent with the public interest." *Zimmer*, 444 Md. at 520–21 (citation modified).

Zoning, on the other hand, is a more concrete term that is generally "used to describe the process of setting aside disconnected tracts of land varying in shape and dimensions, and dedicating them to particular uses designed in some degree to serve the interests of the whole territory affected by the plan." *Id.* at 505 (quoting *Md. Overpak Corp. v. Mayor & City*

4

*Council of Balt.*, 395 Md. 16, 48 (2006)).  Euclidean zoning—a traditional form of zoning that is known for its rigidity—has been described as "a legislative method or device for controlling land use by establishing zoning districts with set boundaries and providing for specific regulations as to the type or nature of permitted and prohibited land uses, height of structures, lot sizes and restrictions, building coverage limitations and similar regulations."[1] Stanley D. Abrams, Peter Z. Goldsmith & Joseph A. Stevens, Guide to Maryland Zoning Decisions § 1.01 n.1 (6th ed. 2024).  Euclidean zoning regulations are legislatively established in the text of the zoning ordinance, with a corresponding zoning map that identifies the particular areas to which the zoning laws apply.  *Id.*

In Maryland, Euclidean zoning laws are applied to properties located in zoning districts through three primary legislative zoning processes: "1) original zoning; 2) comprehensive rezoning; and 3) piecemeal rezoning."  *Rylyns*, 372 Md. at 532.  The fundamental distinction between these zoning processes is that "the first two are purely legislative processes, while piecemeal rezoning is achieved, usually at the request of the property owner, through a quasi-judicial process leading to a legislative act."  *Id.*

This Court has stated that for a zoning action to qualify as a comprehensive zoning or rezoning,

> the legislative act of zoning must: 1) cover a substantial area; 2) be the
> product of careful study and consideration; 3) control and direct the use of

---

[1] Euclidean zoning derives both its name and its substance from the decision of the United States Supreme Court in *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926).  Euclidean zoning has its roots in the Standard State Zoning Enabling Act, which was written in the 1920s.  *County Council of Prince George's County v. Zimmer Dev. Co.*, 444 Md. 490, 512 n.14 (2015).  The Maryland General Assembly enacted Maryland's first local zoning enabling statute in 1927.  *Id.* at 507 (citing 1927 Md. Laws, Ch. 705).

5

land and development according to present and planned future conditions, consistent with the public interest; and, 4) set forth and regulate all permitted land uses in all or substantially all of a given political subdivision, though it need not zone or rezone all of the land in the jurisdiction.

*Id.* at 535. An essential feature of a comprehensive rezoning is that it typically results in some affected properties being upzoned or downzoned—that is, placed in a different zone that permits entirely different land uses, or the same types of uses but at higher or lower intensities. *See, e.g.*, *Anderson House LLC v. Mayor & Council of Rockville*, 402 Md. 689, 701–03 (2008) (landowner challenged the rezoning of its residential property into a commercial transition zone); *Montgomery County v. Woodward & Lothrop, Inc.*, 280 Md. 686, 691–93 (1977) (property owners challenged the rezoning of properties into a new zoning classification that greatly reduced the height and density of development of the properties). Of course, it is unsurprising that substantive changes in zoning reclassifications occur during a comprehensive rezoning because the process is preceded by a period of study involving a substantial area, which considers current and future land use needs and the public interest. *See, e.g.*, *Rylyns*, 372 Md. at 535. A substantive change to a property's Euclidean zoning classification during a comprehensive rezoning avoids the application of the "change or mistake rule" that accompanies piecemeal rezonings.[2]

---

[2] We have explained the "change or mistake rule," which applies to piecemeal rezonings, as follows:

[An] original or comprehensive zoning may be changed (unless by a subsequent comprehensive zoning) only by a subsequent piecemeal zoning, which in the case of a Euclidean zone may be granted only upon a showing of unforeseen changes in the surrounding neighborhood occurring since the prior original zoning or comprehensive rezoning or mistake of fact made by

6

Given the planning, land use, and public interest considerations that accompany a comprehensive rezoning, it enjoys a presumption of correctness, and it may only be changed "by the adoption of a subsequent comprehensive rezoning, or, in the case of a piecemeal Euclidean zoning application, upon a showing that there was a mistake in the prior original or comprehensive zoning or evidence that there has been a substantial change in the character of the neighborhood since the time the original or comprehensive zoning was put in place." *Id.* at 535–36 (citing *Stratakis v. Beauchamp*, 268 Md. 643, 652–53 (1973); *Anne Arundel County v. Md. Nat'l Bank*, 32 Md. App. 437, 440 (1976)). "The scope of review by Maryland courts of the legislative decisions embodied in original zonings and comprehensive rezonings is quite narrow." *Zimmer*, 444 Md. at 509 (footnote omitted). Specifically, judicial review is limited to "whether the local zoning authority: (1) followed the appropriate procedure designated by the zoning enabling statute and its own ordinances; (2) comported with the requirements of due process; (3) aimed to achieve a valid public purpose; and (4) did not otherwise exceed the police powers." *Id.* (footnote omitted).

With these general background principles in mind, we turn to the State enabling legislation that governs planning and zoning in the portion of Prince George's County that is located within the Regional District.

---

the zoning authority in the original zoning or previous comprehensive rezoning.

*Zimmer*, 444 Md. at 512.

7

## B. The Maryland-Washington Regional District Act

Prince George's County's planning and zoning authority primarily emanates from the Maryland-Washington Regional District Act ("RDA"), which is currently codified in Division II of the Land Use Article ("LU") of the Maryland Annotated Code (2012, 2024 Supp.). The RDA is the enabling legislation that regulates planning and zoning within the Regional District, which includes most of Prince George's County[3] and Montgomery County. *Zimmer*, 444 Md. at 524–25.

Two types of plans are required in the Regional District: "(1) a 'general plan' containing, at a minimum, recommendations for development in the respective county and supporting analysis; and, (2) 'area master plans' pertaining to local planning areas into which each county is divided." *Id.* at 521–22. These plans are prepared by the Maryland-National Capital Park and Planning Commission (the "Commission"),[4] which is comprised of the separate planning boards for each county and must be approved by the local

---

[3] The Maryland-Washington Regional District encompasses "the entire area of Prince George's County, except for the City of Laurel as it existed on July 1, 2013." Md. Code Ann. (2012, 2024 Supp.) Land Use Article ("LU") § 20-101(b).

[4] The Maryland-National Capital Park and Planning Commission is an agency of the State that is comprised of a total of ten members—five of whom are residents of Montgomery County, and five of whom are residents of Prince George's County. LU §§ 15-101–15-102. The Commission members from each county are designated as "the Montgomery County Planning Board or the Prince George's County Planning Board, respectively." LU § 20-201; *see also* LU § 14-101(b)–(c). The county planning board for each respective county "is responsible for planning, subdivision, and zoning functions that are primarily local in scope[.]" LU § 20-202(a)(1)(i). It has "exclusive jurisdiction over: (i) local functions, including: 1. the administration of subdivision regulations; [and] 2. the preparation and adoption of recommendations to the district council with respect to zoning map amendments[.]" LU § 20-202(b)(1)(i).

legislative body for each respective county. LU §§ 14-101(b) and (f), 21-103, 21-105, 21-201–21-203.

The Prince George's County Council, sitting as the District Council, is authorized to adopt and amend zoning ordinances and the accompanying zoning maps for that portion of the County located in the Regional District. *Id.* §§ 22-104(a), 22-206(a). Significantly—for purposes of our discussion in this case—the District Council is required to hold an advertised public hearing prior to amending its zoning laws, including any zoning maps.[5] *Id.* § 22-206(a)(2).

## C. State Public Ethics Laws Unique to Prince George's County Zoning Matters

The General Assembly has enacted State public ethics laws that apply exclusively in Prince George's County to certain types of zoning proceedings, including zoning map amendments. Md. Code Ann., (2019 Repl. Vol., 2024 Supp.) General Provisions Article ("GP") §§ 5-833–5-839. Notably, where a landowner applicant or the landowner's agent participates in an area master plan or sectional map amendment process "where the intent is to intensify the zoning category applicable" to the applicant's land, the ethics laws require, among other things, that the applicant or agent (1) file affidavits with their application, disclosing all payments made by or on behalf of the applicant to District Council members or their campaign committees within 36 months of the date of the application, or (2) state that no such payments

---

[5] LU § 22-206(a) states:

> A district council may amend its zoning laws, including any maps:
>   (1) in accordance with procedures established in its zoning laws; and
>   (2) after holding an advertised public hearing.

have been made. GP §§ 5-833(d)(3), 8-535. The State public ethics laws prohibit members of the Council from participating in land use decisions involving applicants who have made such payments to them or their campaign committee. *Id.* § 5-835(b). These State public ethics laws play an important role in the dispute between the parties, which we discuss more fully below.

### D. Pertinent Provisions of the Prince George's County Zoning Ordinance

As mentioned above, the General Assembly has granted authority to the District Council to adopt and amend local zoning laws. LU § 22-104. Consistent with that authority, the District Council has adopted a county zoning ordinance, which is codified as Subtitle 27 of the Prince George's County Code ("PGCC"). In 2018, the District Council repealed and recodified its zoning ordinance in its entirety. The new zoning ordinance became effective on April 1, 2022. The briefs filed in this case, as well as those filed in the Appellate Court, cite to the prior version of the zoning ordinance. For the sake of consistency, we will do the same. Where appropriate, we will identify the corresponding provision in the new zoning ordinance in the footnotes.

For zoning and land use purposes, Prince George's County is divided into geographical areas that are referred to as "subregions." Decades ago, the District Council enacted area master plans and zoning maps (originally called "sectional maps") for each subregion. The legislation enacting a revised zoning map is referred to as a "sectional map

amendment" or "SMA."  Area master plans and sectional map amendments are periodically reviewed and modified as appropriate.[6]

The initial versions of the proposed area master plans and sectional map amendments are prepared by the Commission's staff.  After these documents are approved by the Prince George's County Planning Board (the "Planning Board"), they are forwarded to the District Council for its own review, modification, and ultimate adoption.  The county zoning ordinance contains the procedural and substantive requirements for this process, which are set forth in PGCC §§ 27-227 and 27-228.[7]

## II

## Procedural History

The complicated legal, factual, and procedural background that preceded our review of the instant matter is summarized in *Bazzarre v. County Council of Prince George's County Maryland*, No. 1016, 2017 WL 2334472, at *2–13 (Md. Ct. Spec. App. May 30, 2017), and *County Council of Prince George's County v. Robin Dale Land LLC*, 263 Md. App. 1, 11–33 (2024).  We touch on some of this procedural history below.

---

[6] *See* Prince George's County Code ("PGCC") § 27-641(c) (requiring the Prince George's County Planning Board, with the written concurrence of the District Council, to adopt an area master plan not later than six years after the adoption of a sectional map amendment for the planning area), and § 27-221 (requiring the District Council to schedule a sectional map amendment for each planning area at least once every ten years).  These code provisions are currently codified without substantive amendment as PGCC §§ 27-3502(c)(1) and 27-3502(h)(5).

[7] Sections 27-227 and 27-228 are currently codified without substantive amendment as PGCC § 27-3503(b)(7)(C) and PGCC § 27-3503(b)(7)(D).

11

**A. The 2009 Section Map Amendments and Area Master Plans**

The underlying dispute originated from the District Council's adoption of a master plan and sectional map amendment in 2009 for two specific regions in Prince George's County—subregions 5 and 6.[8] The District Council initiated area master plan reviews and comprehensive rezoning processes for these subregions in 2007. As part of this process, the Commission staff accepted requests from property owners to modify their properties' land use classifications. As discussed above, Maryland public ethics laws require that any property owner seeking a more intensive zoning classification file an ethics affidavit. GP § 5-835. During this process, many persons who sought more advantageous zoning or master plan classifications in the 2009 comprehensive rezoning process for these subregions failed to file ethics affidavits.

## 1. *Christmas Farm*

Christmas Farm is the owner of approximately 117 acres of property located in Upper Marlboro in subregion 6. Christmas Farm sought to have its property rezoned from

---

[8] The appellees in the underlying Appellate Court proceeding were four landowners aggrieved by the District Council's decisions related to the 2009 sectional map amendment and area master plan amendment: Robin Dale Land, LLC ("Robin Dale"); Neale Drive, LLC ("Neale Drive"); MCQ Auto Servicenter, Inc. ("MCQ"); and Christmas Farm, LLC ("Christmas Farm"). *County Council of Prince George's County v. Robin Dale Land, LLC*, 263 Md. App. 1, 9 (2024). The MCQ, Robin Dale, and Neale Drive properties are located in subregion 5. The Christmas Farm property is located in subregion 6. Robin Dale and Neale Drive did not participate in the proceedings before this Court.

the R-A zone[9] to the R-R zone.[10]  Because the requested zoning represented a more intensive zoning classification, like many other affected property owners, Christmas Farm was required to file an ethics affidavit but failed to do so.

The sectional map amendment and area master plan review, evaluation, and amendment process culminated in September 2009, when the District Council enacted resolutions adopting new master plans and sectional map amendments for subregions 5 and 6 (the "2009 Resolutions").  Christmas Farm was among the property owners who successfully persuaded the District Council to grant its requests for more intensive zoning classification.

### 2. MCQ

MCQ is the owner of a 1.7-acre parcel in the rural community of Accokeek in subregion 5 in southern Prince George's County.  At one time, MCQ's property was the site of an automotive service station, which was destroyed by fire in 2004.  The property has been vacant since then.  When the 2009 master plan and sectional map amendment review and approval processes were initiated, MCQ's property was "split-zoned"—that is, one part of the property was classified as C-M (Commercial Miscellaneous), while the

---

[9] The R-A zone is intended to "provide for large-lot one-family detached residential subdivisions, while encouraging the retention of agriculture as a primary land use[.]" PGCC § 27-426(a)(1)(A).

[10] The R-R zone is intended to "provide for and encourage variation in the size, shape, and width of one-family detached residential subdivision lots, in order to better utilize the natural terrain"; and "facilitate the planning of one-family residential developments with moderately large lots and dwellings of various sizes and styles[.]" PGCC § 27-428(a)(1)(A)–(B).

remainder was classified as R-R (Rural Residential).  An automotive service station is a permitted use in the C-M district, but it is not a permitted use in the R-R district.

MCQ did not seek a change to its zoning classifications in the sectional map amendment/area master plan amendment processes.  Therefore, it was under no obligation to file an ethics affidavit while the sectional map amendment process was ongoing, and it did not do so.  However, based on advice from its staff, the Planning Board recommended that the C-M portion of the MCQ property be rezoned to R-R.  Once it learned of the Board's recommendation, MCQ objected to the proposed change but to no avail.  The subregion 5 sectional map amendment adopted by the District Council classified the entirety of MCQ's parcel as R-R.

At this point, MCQ had a choice of remedies.  First, it could file a petition for judicial review of the Council's decision.[11]  *See* LU § 22-407(a).  Second, MCQ could file a "revisory petition" pursuant to PGCC § 27-228.[12]  The revisory petition process allows parties aggrieved by a sectional map amendment's classification of their property to file a petition

---

[11] Section 22-407 of the Land Use Article states in relevant part:

(a)(1) Judicial review of any final decision of the district council [for Prince George's County], including an individual map amendment or a sectional map amendment, may be requested by any person or entity that is aggrieved by the decision of the district council and is:

\*       \*       \*

(iii) the owner of the property that is the subject of the decision; or
(iv) the applicant.

[12] This statute is currently codified without substantive change as PGCC § 27-3503(b)(7)(D).

to revise the classification. *Id.* If, after an evidentiary hearing, the Council concludes that the property's classification in the sectional map amendment review and approval process was based on "factual error" or "fraud on behalf of the District Council," the Council is authorized to restore the prior zoning classification.[13] PGCC § 27-228(c).

MCQ filed a revisory petition asserting that the planning staff's recommendation that its property be downzoned was based on erroneous information. When MCQ filed its petition, one of its owners filed an ethics affidavit affirming that neither MCQ nor its principals had made donations to any member of the District Council in the relevant time period.

After holding a public hearing, the District Council granted the petition. The Council's decision and its reasoning were documented and implemented in Zoning Ordinance No. 3–2010. After summarizing and evaluating the evidence presented at the

---

[13] Specifically, PGCC § 27-228(c) stated, in pertinent part:

(c) Criteria for revision.

(1) The District Council may only consider revising the Sectional Map Amendment for property that was reclassified to a zoning category other than that which existed prior to approval of the Sectional Map Amendment. Such consideration shall be based on the following criteria:

(A) A factual error, which could not have been corrected by the property owner, was contained in the record of the Sectional Map Amendment proceedings which may have caused an erroneous description of a specific property, and which is sufficient to justify making a different decision on the Sectional Map Amendment . . . .

(B) Evidence of fraud on behalf of the District Council.

15

hearing, the Council determined "that the SMA rezoning" of MCQ's property "was the result of mistake, or factual error, within the meaning of" PGCC § 27-228. The Council stated that "[t]he MCQ Auto station, destroyed by fire about five years ago, should have been left in the C-M Zone when the Council approved the Subregion 5 Master Plan and Sectional Map Amendment." The decision of the Council became final in April 2010. Although the Prince George's County Code provides that parties aggrieved by a revisory petition decision have the right to seek judicial review of the decision,[14] no petition for judicial review was filed. No one suggests that there were any improprieties or irregularities in the District Council's decision.

## B. The *Accokeek* Judicial Review Proceeding

Parties aggrieved by zoning and planning decisions arising from the 2009 Resolutions filed petitions for judicial review challenging the master plans and sectional map amendments for subregions 5 and 6. Many of the judicial review actions involved assertions that property owners and/or members of the District Council had violated the State public ethics laws. These actions were consolidated in a proceeding referred to by the parties and the Appellate Court as the "*Accokeek* case."

### 1. *The First Remand in the* Accokeek *Case*

After the petitions for judicial review were filed, the administrative record was transmitted to the circuit court. However, before the circuit court ruled on the merits of the parties' contentions, members of the District Council's staff began to accept untimely-filed

---

[14] *See* PGCC § 27-228(e)(6).

16

ethics affidavits. At least 23 property owners whose properties had received favorable treatment by the District Council in the 2009 Resolutions filed affidavits during this period. Because these affidavits were not in the administrative record transmitted to the circuit court, the court entered an order in September 2012, remanding the case to the District Council "for the limited purpose" of providing the court with "any affidavits and/or all records in possession of the" District Council that would indicate whether any property owner that participated in the sectional map amendment process with the intent of seeking a zoning intensification tendered a payment to any member of the District Council.

Instead of complying with the court's instruction, the District Council's staff sent notice of the court's order to some, but not all, of the property owners who had obtained favorable treatment in the sectional map amendment process but who had not timely filed ethics affidavits. The record returned to the circuit court included the untimely affidavits filed by property owners who had been notified by the District Council staff. The Council's staff did not notify Christmas Farm, and it did not file an ethics affidavit.

### 2. The Initial Judgment in the Accokeek Case

In due course, the circuit court entered a judgment in the *Accokeek* case, affirming the zoning and plan designations of those properties for which both timely and belated ethics affidavits had been filed and reversing the designations of those properties for which ethics affidavits had not been filed. As part of its order, the court made specific findings as to whether affidavits had been filed for more than 70 parcels that had received favorable

treatment from the District Council. The court found that no affidavit had been filed on Christmas Farm's behalf and reversed its land use reclassifications.

MCQ was not a party to the *Accokeek* judicial review proceeding. Nonetheless, the circuit court's judgment noted that MCQ's property had been downzoned by the sectional map amendment from C-M to R-R but that the parcel had been "rezoned back to C-M after the filing of a Revisory Petition by the property owner."

### 3. *The Final Judgment in the* Accokeek *Case*

After the circuit court entered its order, several additional property owners moved to intervene. Many of the owners stated that they had not been notified by the District Council's staff that they had an opportunity to file an affidavit. They asserted that it was unfair to use ethics affidavits as the basis for affirming some rezonings and reversing others when the District Council failed to notify all affected landowners. The court held a hearing on these motions and, in October 2012, issued a revised judgment. In its written order, the court explained that the "troubling ethical lapses in our County over the last decade" were "not lost on the court." The court stated that the District Council was "informed of the need for affidavits and turned a blind eye to the law[,]" and also observed that "affected property owners and interested persons were not uniformly notified of the need or opportunity for late filing of affidavits." The court determined that the actions of the District Council and its staff in advising some, but not all, property owners to submit affidavits, endangered "fair play," and that "[t]o allow this matter to languish any longer would violate procedural

18

and substantive due process rights established by the United States Constitution and the Maryland Declaration of Rights."

The court expressed frustration that it had "provided the District Council with a remedy to this situation," which, according to the court, "was administered in a disjointed and uneven manner." "Fearing a similar result in the future," the court concluded that it could not "allow this matter to bounce indefinitely between the court and Council in an attempt to secure a piecemeal, *nunc pro tunc* remedy."

The court concluded that, "with the exception of certain unobjectionable pieces of property," it "ha[d] no choice but to return the matter to the District Council for review of the recommendations of the Maryland National Capital Park and Planning Commission." The court admonished the District Council to "expediently review this matter and give great weight to certain properties that have received approval" pursuant to the 2009 Resolutions, stating that, "[t]o change these already approved properties would be a grave injustice." Accordingly, the court declared the adoption of the 2009 Resolutions void for failure to meet the affidavit requirements under the State public ethics laws and reversed the decision of the District Council as set forth in the 2009 Resolutions.

The court specifically excluded three properties from its judgment because their zoning classifications were "handled in proceedings outside the scope" of the 2009 Resolutions—including one property that, like MCQ's property, had been changed by a revisory petition. Even though MCQ's parcel's zoning had also been changed by a revisory

petition—and as noted above, MCQ was not a party to the *Accokeek* action—it was not excluded from the *Accokeek* judgment.

## C. Second Remand to the District Council and the 2013 Council Resolutions

As a result of the *Accokeek* judgment, the case was again remanded to the District Council, which remanded the case to the Planning Board. The Council's order to the Planning Board stated that it was remanding the matter to the Planning Board pursuant to PGCC § 27-227(a) of the zoning ordinance, "*for purposes of meeting the affidavit requirements*" of the State public ethics laws, "and resubmittal of its January 2009 Preliminary Subregion [5 and 6] Master Plan[s] and Proposed Section Map Amendment[s] to the District Council[.]"[15] (Emphasis added).

However, as the Appellate Court in *Bazzarre* explained, the straightforward process contemplated in the District Council's order "went badly awry":

> [D]uring the reconsideration process, the Planning Board did not limit itself to collecting ethics affidavits. Instead, it accepted new applications for zoning changes and updated its recommendations for previously considered applications. Additionally, the Planning Board's staff altered the record by removing testimony and other evidence submitted by property owners who had not timely filed ethics affidavits in the 2009 SMA and area master plan processes. Finally, the Planning Board changed some of its recommendations to the District Council regarding zoning classifications for certain properties.

2017 WL 2334472, at *11.

---

[15] PGCC § 27-227 sets out an abbreviated process whereby the District Council can correct a procedural error in a sectional map amendment after a court finds the sectional map amendment enactment process is invalid because of a procedural defect. That section is now codified as PGCC § 27-3503(b)(7)(C). We discuss PGCC § 27-227 in more detail *infra*.

Based upon the flawed record returned to it by the Planning Board, the District Council eventually adopted revised versions of the master plans and sectional map amendments for the two planning subregions (the "2013 Resolutions"). In these resolutions, the District Council downzoned the Christmas Farm property from R-R to R-A, and downzoned the commercial portion of the MCQ property from C-M to R-R. In separate judicial review proceedings, the circuit court affirmed the 2013 Resolutions. Several property owners, including Christmas Farm and MCQ, filed petitions for judicial review. MCQ's appeal, together with appeals that raised issues pertaining to non-compliance with the State public ethics laws, were resolved by the Appellate Court in *Bazzarre*.

## D. *Bazzarre v. County Council of Prince George's County*

The parties in *Bazzarre* presented a total of 26 contentions, all of which were addressed by the Appellate Court in a detailed and thorough analysis. 2017 WL 2334472, at *15–46. For our purposes, we are concerned with only one issue that the Appellate Court addressed—whether the District Council complied with the circuit court's instructions in the *Accokeek* judgment. *Id.* at *27–36.

On this point, the court began its analysis with the "inarguable premise" that "judicial directives must be obeyed" "[i]n a society that honors the rule of law[.]" *Id.* at *29. The court observed that the District Council was a party to the *Accokeek* action and was therefore "bound by the judgment in that case." *Id.* As such, the court explained, any actions "taken by the District Council that are in violation of the *Accokeek* Judgment" were "illegal and beyond the scope of the Council's lawful authority." *Id.*

21

The District Council maintained that its actions in adopting the 2013 Resolutions were "not improper" because (1) in the *Accokeek* judgment, the circuit court had declared the 2009 Resolutions to be "void," and (2) the applicable provision of the Prince George's County Code—PGCC § 27-227—explicitly authorized the District Council to readopt SMAs with amendments. *Id.* at \*35. The Appellate Court rejected the District Council's arguments.

The Appellate Court acknowledged that the *Accokeek* judgment declared the 2009 Resolutions to be void, meaning that the 2009 Resolutions were therefore "of no legal effect"—at least with respect to the properties that were the subject of these appeals. *Id.* That said, after interpreting the language in the order, as well as the procedural history that preceded the entry of the *Accokeek* judgment, the court concluded that, in context, the District Council was required to consider the SMAs for subregions 5 and 6 on the record developed before the Planning Board and the District Council that formed the basis for the 2009 Resolutions. *Id.* The court rejected the District Council's argument that, by invoking its process under PGCC § 27-227, it was entitled to expand the scope of the circuit court's remand order, explaining that although the code provision "*certainly authorized the District Council to adopt amendments to cure the procedural defect, or that naturally arose from additional information gained from the cured procedural flaws*[,]" it did "*not mean that the Council could adopt any amendment that it wished.*" *Id.* (emphasis added).

For these reasons, the Appellate Court held that the District Council exceeded its authority in enacting the 2013 Resolutions. *Id.* The Appellate Court reversed the 2013

22

Resolutions, but only with respect to the properties that were the subject of the appeals. *Id.* Turning to the remedy, the court acknowledged that the errors made by the Planning Board and District Council did not "necessarily entitle appellants to have their 2009 zoning and planning classifications restored to their properties." *Id.* at \*36. For each affected property, the court instead found that the appropriate remedy was to remand the case to the District Council for reconsideration based on the unredacted 2009 record. *Id.* at \*46. The Appellate Court expressly limited the District Council's consideration of materials outside the 2009 record to: (1) updated ethics affidavits; (2) disclosures of any ex parte communications; and (3) any other documents necessary to comply with the State public ethics laws. *Id.*

As to MCQ, the Appellate Court stated that it was "troubled by the circuit court's unexplained failure" to include its property "in the list of properties excepted from the *Accokeek* Judgment." *Id.* at \*44. Considering MCQ's successful revisory petition proceeding, the court concluded that it was difficult to attribute that property's inclusion in the remand proceeding "to anything other than oversight." *Id.* Nonetheless, the court observed, the proper way for MCQ to have corrected this error would have been "to intervene in the *Accokeek* action and seek appropriate relief." *Id.* Given MCQ's failure to address the issue in the *Accokeek* case, the court determined that the appropriate remedy was for the court to remand MCQ's case "to the District Council for action based upon a consideration of the 2009 record"—which was what the *Accokeek* judgment ordered—"*as well as the record of the revisory petition proceeding—which fairness requires*." *Id.* (emphasis added).

23

## E. Third Remand to the District Council

Pursuant to the mandates issued in *Bazzarre*, the circuit court remanded the cases in July 2018 to the District Council "for further action consistent with the opinions" of the Appellate Court. The remand order affected five properties[16] in subregion 5, including MCQ's property. The Christmas Farm property was the only property subject to the remand order for subregion 6. After the property owners filed updated ethics affidavits, the District Council's staff prepared two resolutions for the Council's consideration—one resolution for each subregion.

The two resolutions were considered by the Council in an open work session held on February 12, 2019. The District Council did not hold a public hearing. Instead, it considered the resolutions in a "work session," which meant that members of the public were permitted to observe but not to comment. The Council did not provide notice of the work session to the property owners or their counsel. The transcript of the work session is included in the record and consists of only a handful of pages.[17]

---

[16] The properties that legal counsel referenced were the Neale Drive, Robin Dale, and Clagett or Bazzarre property. In *Bazzarre v. County Council of Prince George's County*, the Appellate Court explained that the Clagetts were eight individuals who were parties in that case. 2017 WL 2334472, at *1. They were not parties in this case. Neale Drive and Robin Dale were parties in the underlying appeal before the Appellate Court. *See Robin Dale*, 263 Md. App. at 9. As previously noted, they have not participated in the proceedings in this Court.

[17] The entirety of the transcript of the February 2019 work session comprises 15 pages for subregion 5, and 13 pages for subregion 6, including the vote roll call for each session, the cover pages, and the transcriber's affidavits.

After opening the work session, the Chair asked the Councilperson who sponsored the resolutions to make a statement. The sponsor asked legal counsel for a "short orientation." Legal counsel then proceeded to give a cursory summary of the planning history for the two subregions and of the 2009 SMA proceedings. Counsel mentioned that the four affected properties—other than MCQ's property—had requested a more intensive zoning classification, which the District Council had approved, but that the more intensive uses were "not what [the] Planning Board recommended." Aside from counsel's passing reference to MCQ's property not being one of the properties that had initially sought a more intensive zoning reclassification, MCQ was not mentioned again.

Turning to subregion 6, counsel noted that Christmas Farm's property was the only property that needed to be reconsidered. Counsel stated that Christmas Farm had requested a zoning intensification in the 2009 SMA process, which was granted by the Council at that time, but was invalidated by the court and "remanded to the District Council to make a new decision."

After counsel's brief overview of the procedural history, the District Council enacted two resolutions—CR-11-2019 and CR-12-2019, which adopted area master plans and sectional map amendments for the properties in subregions 5 and 6 that were subject to the *Bazzarre* remand order (the "2019 Resolutions"). With no discussion by the Council members, Christmas Farm's property was once again downzoned from the R-R zoning classification that it received in the 2009 SMA process to the R-A zone. The commercial portion of MCQ's property was downzoned to the residential classification that had been applied in the 2009 SMA process. In so doing, neither the District Council nor legal

25

counsel made any reference to MCQ's successful 2010 revisory petition proceeding in which the District Council had made a specific determination that the 2009 SMA rezoning of the commercial portion of MCQ's property to a residential classification was based on a factual error.

### F. Judicial Review in Instant Matter

Christmas Farm, MCQ, and two other property owners in subregion 5 filed petitions for judicial review.[18] The Circuit Court for Prince George's County determined that the District Council had not complied with the instructions in the *Bazzarre* remand order. In an amended order dated March 5, 2021, the circuit court reversed the decisions of the District Council and remanded the cases to the District Council with the following instructions: (1) the District Council reconsider the zoning classifications for the affected properties in accordance with PGCC § 27-227, including the requirement to conduct a public hearing with prior notice; (2) that any amendments to subregions 5 and 6 be restricted to those that "naturally arise from the affidavits and/or the correction of procedural errors"; (3) in its consideration of MCQ's property, the District Council consider and address MCQ's successful revisory petition proceeding; and (4) provide a clear record "as to the basis of its decision" as it "arises from the unredacted 2009 record."

---

[18] As mentioned in footnote 8, the other property owners, Neale Drive and Robin Dale, participated in the underlying proceedings in the circuit court and in the Appellate Court, but did not participate in the proceedings before this Court.

## G. Appellate Court

The District Council filed a timely notice of appeal. During the pendency of the appeal—and after initial briefs had been filed by all parties—the District Council raised a new argument in its reply brief. The District Council advised the Appellate Court that, in November 2021, it adopted CR-136-2021, which approved a countywide sectional map amendment that applied new zoning classifications to all of the approximately 300,000 properties located within that portion of Prince George's County located in the Regional District. *Robin Dale*, 263 Md. App. at 33–34. The District Council requested that the Appellate Court take judicial notice of a 291-page appendix, which contained documents related to the countywide rezoning. *Id.* at 43–44. The District Council argued that its adoption of CR-136-2021 constituted a comprehensive rezoning—and therefore a substantive change in the law—which rendered the case moot. *Id.* at 34. Accordingly, in its reply brief, the District Council requested that the Appellate Court dismiss the appeal.

Assuming the case was not moot, the District Council argued that the circuit court erred in several respects. We touch on only those assertions of error that are pertinent to the current issues pending before us. First, the District Council argued that the circuit court erred in ruling that it was required to hold a public hearing on remand. *Id.* at 35. The District Council asserted that it is not required to follow the process outlined in PGCC § 27-227 under the circumstances and, therefore, no public hearing was required. *Id.* Second, the District Council argued that the record of the 2019 proceeding reflected that it had, in fact, considered MCQ's revisory petition. *Id.*

The Appellate Court rejected all of the District Council's arguments and affirmed the circuit court's judgment. *Id.* at 11. With respect to the District Council's mootness argument, the court took judicial notice of the 291-page appendix to the District Council's reply brief related to the countywide rezoning. *Id.* at 43–44. The court described in detail the process undertaken by the County, including: (1) the adoption of the new zoning ordinance in 2018; (2) the subsequent countywide rezoning of all properties as the final step in the new zoning ordinance's implementation; (3) the General Assembly's enactment of amendments to the State public ethics laws to ensure that no substantive zoning changes occurred during the countywide rezoning; and (4) the numerous statements by the District Council, the Planning Board, and their staff informing the public that the proposed countywide rezoning was intended to accomplish a "non-substantive, technical zoning reclassification of land located within all Planning Areas" in that part of the County within the Regional District. *Id.* at 47–54.

The Appellate Court contrasted the countywide process that implemented the new zoning ordinance with this Court's description of the attributes of a "comprehensive rezoning" in our case law. *Id.* at 45–47. The court also compared the differences between the one-time countywide zoning redesignation process that the District Council established for the new zoning ordinance implementation on the one hand, and the sectional map amendment process on the other—and determined that only the latter process shared the attributes of a comprehensive rezoning as outlined in our case law. *Id.* at 46. Having undertaken this detailed and thorough analysis, the court concluded that CR-136-2021 was not a comprehensive rezoning because it was not "based on the criteria identified by our

28

Supreme Court as the hallmarks of comprehensive rezoning." *Id.* at 52–53. The court determined that the countywide zoning redesignation process was intended to enact non-substantive changes to assign zoning classifications to properties that best aligned with the zoning districts in the former zoning ordinance. *Id.* at 53. Because the 2021 zoning classification process did not constitute a comprehensive rezoning, the Appellate Court held that the aggrieved property owners' appeals were not rendered moot. *Id.*

Turning to the merits, the Appellate Court affirmed the circuit court's determination that the District Council erred in failing to hold a public hearing. The Appellate Court determined that a hearing was required, not only under PGCC § 27-227, but also under § 22-206 of the Land Use Article. *Id.* at 37–38. The court observed that "at the risk of pointing out the obvious, the District Council's work session was not the effective equivalent of a public hearing." *Id.* at 40. Finally, the court rejected the District Council's argument that the record contained any evidence that it considered MCQ's successful revisory petition when it summarily downzoned the commercial portion of its property. *Id.* at 56–57.

The Appellate Court concluded its opinion by restating the circuit court's remand orders, with some additional instructions, *id.* at 57–58, which we will expand upon later in this opinion.

### III

### Standard of Review

In a judicial review proceeding, this Court looks through the decisions of the Appellate Court and the circuit court—although applying the same standard of review as

29

those courts—and evaluates the decision of the agency. *People's Couns. for Balt. County v. Loyola Coll.*, 406 Md. 54, 66 (2006). In this case, we are asked to determine: (1) whether the District Council's 2021 countywide rezoning had the effect of rendering the underlying appeal moot; and, if not, (2) whether, in enacting the 2019 Resolutions, the District Council failed to comply with the remand instructions in *Bazzarre*, the applicable provisions of the Land Use Article, and the County's own procedures for amending a sectional map amendment. These issues are questions of law that we review without deference to the reasoning of the District Council. *County Council of Prince George's Council v. Chaney Enters. Ltd. P'ship*, 454 Md. 514, 528 (2017) (citing *Zimmer*, 444 Md. at 553).

## IV

## Discussion

### A. Mootness

In order to analyze the District Council's mootness argument, it is necessary to provide some background pertaining to the recodification of the zoning ordinance. The matters set forth herein were provided in the appendices to the District Council's and the Property Owners' briefs. Like the Appellate Court, we take judicial notice of these documents that are maintained in the public records of Prince George's County.

#### 1. *Adoption of a New Zoning Ordinance*

In 2014, the Planning Board adopted, and the District Council approved, Prince George's County 2035 General Plan ("Plan 2035"). At that point, the Council, together with the Commission, their respective staffs, consultants, stakeholders, and members of the

30

public, began the monumental task of updating the County's zoning ordinance and subdivision regulations to facilitate the implementation of Plan 2035. As reflected in Council Resolution CR-27-209, this undertaking included almost 400 meetings with as many stakeholder communities as possible.

In 2018, the District Council passed CB-013-2018, which repealed and reenacted the county zoning ordinance in its entirety. The Council bill provided that the new zoning ordinance would become effective on the date that the District Council approved "a Countywide Sectional Map Amendment, for purposes of effectuating the land use and zoning regulations" contained in the new ordinance.[19] Notably, there was one key difference between the repealed zoning ordinance and the new one—the latter contained significantly fewer zoning districts and changed the name of every zoning category in the County.

## 2. Adoption of a New Countywide Zoning Map

To implement the new zoning ordinance, the District Council created a new process by which over 300,000 properties would be transferred from the old zoning categories to the new ones. The District Council established this zoning implementation process through the adoption of CB-14-2018. In that legislation's purpose paragraph, the District Council stated that it was establishing procedures "for the non-substantive zoning reclassification of land located within all Planning Areas of the Maryland-Washington Regional District within Prince George's County[.]" The new process—referred to as the "Countywide

---

[19] On the same day that the District Council passed CB-013-2018, it also enacted revised subdivision regulations (Council Bill CB-015-2018). The effective date of the revised subdivision regulations was also suspended until the effective date of the countywide sectional map amendment.

Sectional Map Amendment" or "CMA"—was codified in PGCC § 27-1900, *et seq.* of the prior zoning ordinance.

To facilitate the countywide rezoning, the District Council enacted another critical piece of legislation in 2019—CR-27-2019. In that resolution, the District Council reiterated that the CMA was intended to accomplish a "non-substantive zoning reclassification" of all properties within the county located in the Regional District. The District Council adopted three documents that were attached to the resolution: (1) a document titled "Draft Recommended Goals, Concepts, and Guidelines and Public Participation Program" (the "Public Participation Program"); (2) a proposed schedule for the countywide rezoning; and (3) a decision matrix titled "Proposed Guide to New Zones," dated July 2019 (the "Decision Matrix").

In the Public Participation Program, the District Council explained that the rezoning was intended to apply the zoning categories contained in the new zoning ordinance to all properties in Prince George's County, which was necessary for the new zoning ordinance to take effect. Notably, that document stated that the countywide rezoning was "a non-substantive, technical zoning reclassification" that would "not change land use designations," or "substitute for the comprehensive planning and zoning process, or amend Plan 2035." The Decision Matrix, which is attached as an appendix to the Appellate Court's opinion below, *see Robin Dale*, 263 Md. App. at 59–82, was designed to facilitate the technical reclassification of properties from the current zones in the old zoning ordinance to the most similar zone contained in the new zoning ordinance. It showed the

32

manner in which the old zoning districts would be converted to the new (and substantially fewer) zoning districts under the new zoning ordinance.

The two-year process culminated with the District Council's adoption of CR-136-2021 in November 2021, which adopted the new official zoning map for the portion of Prince George's County located in the Regional District.

### 3. *General Assembly's Limited Ethics Exemption for Countywide Rezoning*

Finally, we mention one additional legislative enactment that informs our analysis below. To implement the new zoning ordinance, legislative changes were required not only at the local level, but also at the State level by the General Assembly. Specifically, because the entire portion of the County located within the Regional District was affected by the countywide rezoning, the State public ethics laws needed to be amended to enable members of the District Council to participate in and to vote on the countywide rezoning where the State public ethics laws would otherwise prohibit participation if a District Council member had received a monetary payment by any property owner within the entire County within a 36-month period. *See* GP § 5-835.

Accordingly, in 2021, the General Assembly passed what became Chapter 429 of the Laws of 2021. The purpose of the Act was, among other things, to exempt "a member of the Prince George's County Council from the prohibition against voting or participating in a proceeding regarding a countywide zoning map amendment under certain circumstances[.]"

Chapter 429 amended the provisions of GP §§ 5-833 and 5-835 to permit members of the District Council who received a payment from a property owner or owners within 36

months to participate in a proceeding that "is part of a countywide zoning map amendment that is recommended by the Planning Board, where the intent is to implement an approved general plan by repealing and replacing all zoning categories applicable to land in Prince George's County." 2021 Md. Laws, Ch. 429.

The uncodified portion of the legislation contained some key limitations on the General Assembly's exemption from the public ethics laws. *Id.* § 2. First, the General Assembly expressly stated that it applied only "during the period when the District Council of Prince George's County is adopting and approving a countywide zoning map amendment for Prince George's County." *Id.* Second, the Generally Assembly expressly stated that, "[e]xcept on a demonstration of error in the public record after a public hearing," the "Planning Board *may not recommend*, and the District Council *may not approve*, any request made by or on behalf of any person for zone intensification that differs substantially from the applicable zoning category or classification recommended in the" Decision Matrix.[20] *Id.* (emphasis added).

---

[20] In its entirety, the uncodified § 2 of Chapter 429 of the 2021 Laws read as follows:

Section 2. AND BE IT FURTHER ENACTED, THAT:

(a) This section applies during the period when the District Council of Prince George's County is adopting and approving a countywide zoning map amendment for Prince George's County.

(b) Except on a demonstration of error in the public record after a public hearing, the Prince George's County Planning Board may not recommend, and the District Council may not approve, any request made by or on behalf of any person for zone intensification that differs substantially from the applicable zoning category or classification recommended in the Proposed Guide to

With this background, we turn to the District Council's mootness argument.

### 4. *Parties' Contentions*

The District Council contends that the Appellate Court erred by failing to conclude that the Property Owners' appeals were rendered moot by the 2021 countywide rezoning. According to the Council, because the 2021 countywide rezoning reclassified the Property Owners' properties into their current zones under the new zoning ordinance,[21] it rendered the Property Owners' assertions of error related to the 2019 proceeding moot. The District Council's mootness argument is rooted in its assertion that the countywide rezoning was a *comprehensive rezoning*, and, as such, represents a substantive change in the County's

_____

New Zones adopted by the District Council on July 16, 2019 under Council Resolution [CR-27-2019].

(c) If a member, as defined in § 5-833 of the General Provisions Article, receives a payment or transfer from any applicant, agent, or entity that files an affidavit under § 5-835(c) of the General Provisions Article and requests a zone intensification that differs substantially from the applicable zoning category or classification recommended in the Proposed Guide to New Zones, the member's treasurer, continuing political committee, or the slate to which the member belongs or belonged must:

(1) return the payment or transfer; and

(2) make note in the public record of the returned payment or transfer before the adoption of the countywide zoning map amendment.

Section 3 provided that the Act, which was effective on July 1, 2021, would remain in effect for a period of one year and six months. On December 31, 2022, the Act had "no further force and effect" and would be abrogated "with no further action required by the General Assembly[.]"

[21] The 2021 countywide rezoning placed the Christmas Farm property in the AR (Agricultural, Residential) and ROS (Reserved Open Space) zones and the entirety of the MCQ property in the RR (Rural Residential) zone.

35

zoning laws that is entitled to a presumption of correctness. The District Council points out that, under our case law in the zoning and land use arena—in the absence of a contrary legislative intent or a landowner's vested right in the zoning—courts apply a substantive change in the law that occurs during the litigation. *See McHale v. DCW Dutchship Island, LLC*, 415 Md. 145, 160 (2010); *Yorkdale Corp. v. Powell*, 237 Md. 121, 126–27 (1964). According to the District Council, because the Property Owners have no vested rights in the underlying zoning,[22] and CR-136-2021 was a comprehensive rezoning—and therefore a substantive change in the County's zoning laws—the Appellate Court erred in failing to hold that the underlying appeal was moot.

The Property Owners counter that the 2021 rezoning was a technical, non-substantive implementation process in which all the properties located in the County within the Regional District were assigned a new zoning classification that was most closely aligned with the zoning classification in the prior zoning ordinance. The Property Owners point out that, in addition to lacking the attributes of a comprehensive rezoning, the District Council expressly acknowledged that the rezoning was technical and non-substantive in its legislative enactments, public outreach materials, and public statements made by County officials at various meetings. According to the Property Owners, the case is not moot because there has been no substantive change in the zoning laws that precludes the District Council's compliance with court judgments that were entered prior to the non-substantive rezoning.

---

[22] The Property Owners have not argued to this Court that they have vested rights in any particular zoning classification.

36

### 5. *The* Yorkdale *Rule—Presumption in Favor of Applying Retroactive Legislative Enactments in the Zoning and Land Use Arena*

"A case is moot when there is no longer an existing controversy when the case comes before the Court or when there is no longer an effective remedy the Court could grant." *Suter v. Stuckey*, 402 Md. 211, 219 (2007). The District Council's mootness argument requires that we consider our case law that applies to circumstances in which there is a change in the law during the pendency of litigation, as well as the principles that govern whether a legislative enactment is to be given retroactive effect.

A retroactive or retrospective legislative enactment is one that "operate[s] on transactions which have occurred or rights and obligations which existed before passage of the act." *Grasslands Plantation, Inc. v. Frizz-King Enter., LLC*, 410 Md. 191, 218 (2009) (quoting *Langston v. Riffe*, 359 Md. 396, 406 (2000)). "Generally, all 'statutes are presumed to operate prospectively.'" *McHale*, 415 Md. at 159 (quoting *Layton v. Howard County Bd. of Appeals*, 399 Md. 36, 51 (2007)). "This presumption is based on the 'fundamental principle of jurisprudence . . . that retroactive application of new laws is usually unfair.'" *Id.* (quoting Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 41:2 (7th ed. 2009)). The rationale for this general presumption is that retroactive application of statutes, "which attempts to determine the legal significance of acts that occurred prior to the statute's effective date, increases the potential for interference with persons' substantive rights." *Id.* (quoting *Washington Suburban Sanitary Comm'n v. Riverdale Heights Volunteer Fire Co. Inc.*, 308 Md. 556, 561 (1987)).

In the context of zoning and land use litigation, we recognize an exception to the general presumption in favor of prospective applications of statutes, which we commonly refer to as the "*Yorkdale* rule" or "*Yorkdale* doctrine"—named after the case discussed below. Under that rule or doctrine, in land use and zoning matters, courts will retroactively apply a substantive change to a statute or ordinance during the pendency of litigation unless it would disturb a vested or accrued substantive right, or unless the Legislature shows a contrary intent. *McHale*, 415 Md. at 160–62.

We first described these principles in *Yorkdale Corp. v. Powell*, 237 Md. 121 (1964). In that case, a landowner obtained a variance from the county zoning commissioner to develop property at a particular density. *Id.* at 122. A neighbor appealed. *Id.* While the matter was pending before this Court—after oral argument but before the Court rendered a decision—the county council passed a bill that prohibited a property owner from obtaining a variance for an increase in residential density. *Id.* at 124. After conducting additional arguments on the issue, we determined that the change in the law mooted the case. In deciding the issue, we first stated that "Maryland consistently has followed the rule that '[a]n appellate court is bound to decide a case according to existing laws, even though a judgment rightful when rendered by the court below should be reversed as a consequence[.]'" *Id.* (quoting *Woman's Club v. State Tax Comm'n*, 195 Md. 16, 19 (1950)). However, for purposes of the application of this rule, we distinguished between substantive changes in the law and procedural ones. We stated that where the change in the law during the pendency of the zoning or land use litigation works only a procedural change to the law, we would not construe that law as applying retroactively to the case before the court absent evidence that the Legislature intended retroactive

38

application of the law. *Id.* at 126–27. After finding no contrary legislative intent, we determined that the case was moot and dismissed the appeal. *Id.* at 133. In reaching that conclusion, we relied upon several cases in which we held that a material zoning change occurring during pending litigation of a petition for a zoning reclassification supersedes any decision made before the legislative body made that material change. *Id.* 124–26 (discussing *Grau v. Bd. of Zoning Appeals*, 210 Md. 19, 23 (1956); *Lake Falls Ass'n v. Bd. of Zoning Appeals*, 209 Md. 561, 565–66 (1956); and *Banner v. Home Sales Co. D.*, 201 Md. 425, 428–29 (1953)).

We have applied the *Yorkdale* rule many times in land use and zoning cases in which the legislative body made a substantive change in the zoning laws during the pendency of the litigation. *See, e.g.*, *Scrimgeour v. Fox Harbor, LLC*, 410 Md. 230, 232–34 (2009) (remanding a case to the county board of appeals that involved a landowner's appeal of a building permit issued to his neighbor for an accessory structure for horse-related activities in light of code changes to definitions pertaining to agricultural accessory structures); *Armstrong v. Mayor & City Council of Balt.*, 409 Md. 648, 651 (2009) (holding that the city council's zoning changes, which made parking lots permitted uses instead of conditional uses, rendered moot a challenge to the issuance of a conditional use permit for a parking lot); *Layton*, 399 Md. at 70 (remanding a case to the county board of appeals after the operator of a wildlife and primate sanctuary appealed the denial of a special exception to operate a primate sanctuary, and the county subsequently amended the code definition on which the board relied in making its zoning decision); *Mayor & Council of Rockville v. Dustin*, 276 Md. 232, 233 (1975) (explaining that "[a]n appeal in a zoning case

39

should be dismissed as moot where, as here, the zoning application has been superseded by a subsequent comprehensive rezoning act of the zoning authorities").

We discussed the *Yorkdale* rule at length and provided some additional parameters in *Grasslands*, 410 Md. 191, and *McHale*, 415 Md. 145. In *Grasslands*, an adjacent property owner challenged a landowner's subdivision application. 410 Md. at 195. After the board of appeals proceeding, and during the pendency of the appeal in the circuit court and the Appellate Court, the county adopted new ordinances. *Id.* at 200–01. These ordinances required the local planning commission, when considering whether to approve a proposed subdivision or site plan, to determine: (1) whether the proposed development conforms to the vision, objectives, and policies of the county's comprehensive plan ("conformity ordinance"); and (2) whether the plan provides for public safety through compliance with the State fire code and any applicable county or municipal fire codes ("emergency services ordinance"). *Id.* at 201–02. The new ordinances did not contain clear expressions of legislative intent regarding prospective versus retroactive application. *Id.* at 218–19. The issue by which the case was disposed of, however, was whether the board of appeals correctly applied the burden of proof in the administrative proceeding. We held that the board erred in imposing the burden on the landowner. *Id.* at 230.

As to whether the new ordinances should be applied on remand, we reaffirmed the general presumption in favor of retroactivity in zoning and land use cases. *Id.* at 220. We expressed disapproval, however, of some "imprecise" language in *Luxmanor Citizens Ass'n v. Burkart*, 266 Md. 631, 644–45 (1972), that could be interpreted as creating a "wholesale distinction between modification of a procedural land use law and modification of a

40

substantive land use law." *Grasslands*, 410 Md. at 224. Instead, we concluded that the "analysis is slightly more complex, *i.e.*, if the new law is procedural, the decision about retroactivity will turn on what aspect of the administrative/adjudication process is changed, at which point in the administrative/adjudication process the change is made, and the question presented to the reviewing court." *Id.* at 227–28 (footnote omitted).

We concluded that the emergency services ordinance was substantive and therefore should be applied at the new hearing because it was "the law in effect at the time of the hearing," and did "not impair vested rights." *Id.* at 228 (footnote omitted). With regard to the conformity ordinance, we also determined that it must apply because, even if it was procedural, the board's decision-making process was required to "*begin anew* for an independent reason"—the improper allocation of the burden of proof in the original administrative hearing. *Id.* at 229. However, we did not completely reject the distinction between procedural and substantive changes to zoning law, explaining that we "should not duplicate expenditure of the parties' and administrative agency's resources for a new hearing simply to apply a new rule, that is arguably procedural, when the hearing was done correctly in the first place." *Id.* at 228.

In *McHale*, we considered whether a recently amended provision of the Chesapeake and Atlantic Coastal Bays Critical Area Protection Program, codified in the Natural Resources Article of the Maryland Code, applied to a variance application that was filed three and one-half years before the General Assembly amended the statute "and where the object of the application was to cure violations" of that provision "occurring prior to the effective date of the amendment." 415 Md. at 149. We affirmed the judgment of the circuit

41

court and concluded that the amended provision of the statute did not apply retroactively to the variance applicant because, upon careful reading of the statute, the General Assembly intended for the amendment to be applied only prospectively. *Id.* at 149–50, 173. We explained:

> Our review of *Yorkdale* and its progeny indicates that, in land use and zoning cases, the general presumption is that, in the absence of contrary legislative intent, a *substantive change to the law* occurring during the pendency of land use litigation and before any substantive rights vest, is to be applied to the pending litigation matter, i.e., understood therefore to be applied retrospectively to some extent. *Yorkdale*, however, recognized the primacy of the Legislature's intent when determining whether a change to the law applies prospectively or retrospectively.

*Id.* at 170–71 (emphasis added). We clarified that the *Yorkdale* doctrine is therefore the default rule to be applied "where there is no clear legislative intent directing" retroactive application, and the "doctrine does not engage where there is clear legislative intent that the law shall be applied prospectively only." *Id.* at 171.

### 6. The **Yorkdale** *Doctrine Does Not Apply Here*

Turning to the District Council's assertions, we determine that the *Yorkdale* rule has no application here because the countywide rezoning did not constitute a substantive change in the law that excuses the District Council from complying with prior judicial orders. As we explained in *Grasslands* and reiterated in *McHale*, we have not "reject[ed] completely the distinction between procedural and substantive changes to zoning law," when considering whether the *Yorkdale* rule applies. *McHale*, 415 Md. at 166 (explaining our holding in *Grasslands*). We agree with the Property Owners and the Appellate Court that the countywide rezoning was not a substantive change in the law that warranted the

42

application of the *Yorkdale* rule. Specifically, we determine that the 2021 countywide rezoning was not a comprehensive rezoning as that term is discussed in our case law, but was, instead, a technical, non-substantive mapping exercise intended to implement the new zoning ordinance by placing each property in the County into a zone that most closely approximated its zone under the prior zoning ordinance.

As discussed above, we have stated that for a zoning action to qualify as a comprehensive zoning or rezoning,

> the legislative act of zoning must: 1) cover a substantial area; 2) *be the product of careful study and consideration*; 3) *control and direct the use of land and development according to present and planned future conditions, consistent with the public interest*; and, 4) set forth and regulate all permitted land uses in all or substantially all of a given political subdivision, though it need not zone or rezone all of the land in the jurisdiction.

*Rylyns*, 372 Md. at 535 (emphasis added). As we observed in *Rylyns*,

> In theory, and usually in practice, [in comprehensive zoning and rezonings] long study and consideration is given to the location of various human activities as they are distributed on the geographic plain, and analysis is made as to where particular types of growth are likely to occur, and where it would be best to allow growth to occur in reference to all of the other land use activities in the area or region in question. Ideally, growth then may be planned in a manner that allows for the expansion of economic activities and opportunities in the area or region for the benefit of its residents[.]

*Id*. at 532. As discussed in Part I.A, given the long-term planning and analysis that typically accompanies a comprehensive rezoning, the process usually results in some properties being upzoned or downzoned—that is, placed in a different zone that permits entirely different land uses, or the same types of uses but at higher or lower intensities. *See, e.g., Anderson House*, 402 Md. at 701–03; *Woodward & Lothrop, Inc.*, 280 Md. at

43

691–93. These types of substantive zoning changes are a natural byproduct of the planning process.

In contrast to these features of a comprehensive rezoning, the countywide zoning was simply intended to implement a new zoning ordinance without making any substantive changes. To be sure, the countywide rezoning covered the entire area of the County that is located in the Regional District. However, as our case law discusses, a "comprehensive rezoning" means more than a rote reassignment of zoning classifications devoid of any study, reflection, or analysis of whether changes should be made as part of long-term planning.

Here, the District Council's implementing legislation,[23] as well as the legislation that was ultimately enacted to adopt the new comprehensive zoning map, made it expressly

---

[23] Part 19 of the former county zoning ordinance was enacted in 2018 to authorize the enactment of a countywide sectional map amendment. Section 27-1900(a) stated in pertinent part:

> The procedures recited within this Part shall be used for purposes of preparing, considering, and approving a Countywide Sectional Map Amendment (hereinafter "CMA"), which the District Council finds is essential . . . in order to implement the approved replacement Zoning Ordinance of Prince George's County, Maryland . . . . To this end, specific purposes of the CMA are:
>
> (1) To apply zoning categories contained in Prince George's County's new Zoning Ordinance to all real property in Prince George's County;
>
> (2) To provide for a comprehensive and systematic rezoning procedure that bridges the gap between the abrogation date of this Zoning Ordinance and the effective date of the new Zoning Ordinance;
>
> (3) To limit piecemeal rezoning;

clear that the countywide rezoning process was a non-substantive mapping exercise for the limited purpose of transitioning the entire portion of the County located within the Regional District into zoning districts in the new zoning ordinance that most closely aligned with the zoning districts in the old zoning ordinance. The record is replete with statements made by the District Council in various implementing legislation, as well as documents intended to inform the public, of the fact that this process was designed to effectuate a non-substantive conversion from the old zoning districts into the new ones.

Highlighting a few examples in the record, the District Council's enabling legislation that created the countywide rezoning process described its purposes as establishing procedures "*for the non-substantive rezoning reclassification*" of all land in Prince George's County within the Regional District. CB-14-2018 (emphasis added). The Public Participation Program adopted by the District Council specifically advised the public that the countywide rezoning was "a non-substantive, technical zoning reclassification" that would "not change land use designations," and would "not substitute for the comprehensive planning and zoning process, or amend Plan 2035." The Decision Matrix was designed to facilitate the technical reclassification of properties from the zones in the old zoning

---

(4) To notify landowners, municipalities, special governed taxing districts, developers, civic associations, agencies, and other County stakeholders of the zoning changes impacting real property;

(5) To provide the necessary foundation the new Zoning Ordinance requires before it can become effective; and

(6) To efficiently and effectively rezone all property in the County in all Planning Areas comprehensively and systematically, in a timely manner, and in accordance with all applicable State and local laws.

ordinance to the most analogous zone in the new zoning ordinance. It provided the manner in which the old zoning districts would be converted to the new (and substantially fewer) zoning districts under the new zoning ordinance. The record also contains numerous public statements by staff and public officials reiterating to the public that the rezoning was a non-substantive technical reclassification that was not intended to take the place of a comprehensive rezoning.[24, 25]

[24] By way of some more examples, at District Council hearings on September 13 and 14, 2021, the Chair opened both meetings by advising the public that the "*CMA is a technical zoning reclassification of land and will not change land use designations. It will not be a substitute for the comprehensive planning and zoning process and will not amend Plan 2035.*" (Emphasis added). The Chair also explained that "[t]he primary goal to the CMA is to transition existing zoning categories from every property in the County to the most similar zon[ing] category in the new zoning ordinance." Similar statements were made in the notices of the public hearings and Power Point presentations made by the Commission's staff. In the Planning Board Resolution No. 2021-133, which approved the countywide sectional map amendment and transmitted it to the District Council for consideration, the Board stated that the reclassification process was "designed to facilitate the technical reclassification of land from the current zone to the closest new zone contained in the replacement Zoning Ordinance[.]"

[25] The Christmas Farm and MCQ properties were specifically discussed during the 2021 countywide rezoning. The comprehensive rezoning records of which we have taken judicial notice include a memorandum to the Planning Board dated October 28, 2021, from Kierre McCune, who was the manager of the countywide rezoning project, and Chad Williams, who was the project facilitator of the recodification of the new zoning ordinance. In their memorandum, these individuals pointed out that MCQ and Christmas Farm requested changes to zoning classifications that

> pertain to properties in active litigation. The [Property Owners] argue that the zones should be changed to reflect the results of court action. However, in both cases the District Council has active appeals pending to both of the most recent court decisions.

> Staff is unable to do anything with these [requests] other than to confirm no error in the proposed zoning map for these properties; the zoning map is not being changed while active litigation is ongoing. The results of this litigation

We also agree with the Appellate Court that, when one compares the technical conversion process for the countywide sectional map amendment (that contains no criteria other than ensuring that the rezonings are consistent with the Decision Matrix) with the criteria for sectional map amendments set forth in both the prior zoning ordinance and the new zoning ordinance (that require that the District Council consider factors that are consistent with comprehensive rezoning),[26] it is clear that the countywide reclassification process lacks the attributes of a comprehensive rezoning.

may well change the zoning map in the future, but any such changes to the zoning map can and would be done administratively.

[26] In contrast to the technical process outlined for the one-time countywide sectional map amendment process, the process for a sectional map amendment contained in PGCC § 27-222 does, in fact, have the features of a comprehensive rezoning. PGCC § 27-222 states:

(a) Sectional Map Amendments shall be in conformance with the principles of orderly, comprehensive land use planning and staged development, and shall be based on the General Plan or the applicable Master Plan or Sector Plan.

(b) Prior to the approval of a Sectional Map Amendment, the Council shall consider the following:
(1) The character of the area under review;
(2) The suitability of particular uses;
(3) The protection of natural features in the area;
(4) The conservation of the value of buildings and communities;
(5) The most appropriate use of land throughout the County;
(6) Any adopted current staging policy, or Capital Improvement or Economic Development Program;
(7) The environmental and economic impact upon both the area under review and the entire County;
(8) The protection of the health, safety, and general welfare of the citizens of Prince George's County.

Section 27-222 is now codified as PGCC § 27-3503(b)(5)(A).

47

Finally, it is worth mentioning the guardrails that the General Assembly placed on this process that *prohibited* the Planning Board from recommending, and the District Council from granting, a request for a more intensive zoning classification during the countywide sectional map amendment process. 2021 Md. Laws, Ch. 429, § 2. The General Assembly required that the Council adhere to the Decision Matrix, thereby removing any option for the Council to consider rezoning properties to more intensive use districts—an essential feature of a comprehensive rezoning.

In conclusion, we hold that the countywide sectional map amendment process did not constitute a comprehensive rezoning.[27] We agree with the Appellate Court that it lacked the "hallmarks of comprehensive rezoning." *Robin Dale*, 263 Md. App. at 52. Indeed, the District Council got it right when it correctly described the process as enacting non-substantive changes to assign zoning classifications to properties that best aligned with the zoning districts in the prior ordinance. Simply put, we determine that it was not the type of change in the law that warrants the application of the *Yorkdale* rule, and it did not render moot the Property Owners' assertions of error that they raised in the underlying

---

[27] In its questions presented to this Court in its petition for a writ of certiorari, the District Council suggested that this Court "recognized" that the countywide rezoning was a comprehensive rezoning in *Prince George's County Council v. Concerned Citizens of Prince George's County*, 485 Md. 150 (2023). At oral argument, counsel for the District Council conceded that this issue was not the subject of that case, nor did the Majority opinion characterize the countywide zoning as a "comprehensive rezoning." To be sure, the dissenting opinion in *Concerned Citizens* referenced the countywide rezoning as a comprehensive rezoning. *Id.* at 259 (Booth, J., dissenting). However, that term was not used by the dissent in the legal sense, nor did the dissent engage in an analysis of whether it constituted a "comprehensive rezoning" as defined by our case law. To the extent that the dissent in that case referred to the countywide rezoning process as a comprehensive rezoning, the author of that dissenting opinion disavows the use of the term.

petition for judicial review. The enactment of the countywide zoning map did not vitiate the District Council's obligation to comply with the directives in the *Bazzarre* remand order.

## B. The District Council's Remaining Contentions

The District Council asserts that the Appellate Court erred in affirming the circuit court's reversal of the District Council's 2019 Resolutions and the circuit court's remand of the case to the District Council for further proceedings. The District Council maintains that, in enacting the 2019 Resolutions, it: (1) complied with the *Bazzarre* remand order; and (2) was not required to hold a public hearing. The District Council argues that this Court should uphold the Council's adoption of the 2019 Resolutions as an exercise of its plenary legislative powers.

The Property Owners assert that the District Council's action in rezoning the properties at a work session failed to comply with the Appellate Court's remand instructions in *Bazzarre* and the public hearing requirements under State and local laws.

As discussed above, in *Bazzarre*, the Appellate Court directed the circuit court to remand the proceedings to the District Council

> with instructions for the Council to assign zoning and/or master plan classifications to the properties based upon the unredacted record that was before the Council in 2009. The only additions to the record shall be appellants' updated affidavits as required by GP § 5-835, disclosures of any ex parte communications as required by GP § 5-836, and any other documents necessary to comply with Part V of the Maryland Public Ethics Law.

2017 WL 233472, at *46. With respect to the MCQ property specifically, the Appellate Court expressly directed that, on remand, the District Council should consider the 2009

49

record, "as well as the record of the revisory petition proceeding—which fairness requires." *Id.* at \*44.

The District Council asserts that it was not required to hold a public hearing under the *Bazzarre* instructions, nor was it required to do so under the applicable provisions of the zoning ordinance. To support its position that it was not required to hold a public hearing, the District Council relies entirely on its interpretation of PGCC § 27-227, which states:

> (a) Where a Sectional Map Amendment is found by a court of competent jurisdiction to be invalid because of procedural defects in the advertising, processing, or approval, the District Council may (*on its own motion*) reconsider the Sectional Map Amendment. The Council may then reapprove the Sectional Map Amendment (including amendments) in accordance with the procedures which apply to the original approval (except the hearing notice requirements).
>
> (b) Prior to reapproval, the Council shall hold a public hearing on the matter.
>
> (c) The public hearing shall be advertised in the County newspapers of record once a week for at least two (2) consecutive weeks prior to the hearing date. The notice shall contain the date, time, place, and purpose of the hearing.
>
> (d) Upon resubmission, the records of the previous hearings on the Sectional Map Amendment shall be incorporated into the record of the new hearing.

(Emphasis added).

It is the Council's position that the public hearing requirement set forth in § 27-227(b) applies only to situations in which a sectional map amendment is reversed by a court, and the Council makes a voluntary decision to reconsider it. In the present case, the Council contends that it did not *choose* to reconsider the sectional map amendment; rather, the Council was *directed* to do so by the Appellate Court in *Bazzarre*. Therefore, concludes the Council, § 27-227(b)'s requirement for a public hearing is inapplicable. We agree with

50

the Appellate Court that the Council's interpretation of § 27-227 is inconsistent with the plain language, as well as the applicable State enabling law.

Starting with the plain language, PGCC § 27-227 sets out an expedited process that the District Council may follow when a sectional map amendment is reversed by a court "because of procedural defects in the advertising, processing, or approval[.]" Subsection (a) authorizes the Council to re-approve the sectional map amendment together with any amendments "in accordance with the *procedures which apply to the original approval* (except the hearing notice requirements)."[28] (Emphasis added). Those procedures include the public hearing required by *both* the State enabling legislation *and* the zoning ordinance. *See* LU § 22-206; PGCC § 27-226(b). We agree with the Appellate Court that PGCC § 27-227(b) simply reiterates the public hearing requirement.

Putting aside our determination that the District Council's interpretation is inconsistent with the plain language of the text, there is an even more compelling reason why

---

[28] We agree with the Appellate Court that PGCC § 27-227 must be read within the context of the entire legislative scheme, including § 27-225, which requires the Planning Board to provide redundant forms of public notice for proposed sectional map amendments. Section 27-225(e)(1) required the Board to publish a notice of the hearing date of the proposed sectional map amendment. Additionally, § 27-225(e)(2) required the Board to mail written notice of the pending map amendment to the owners of real property located in the planning subregion(s) affected by the proposed amendment. Finally, § 27-225(e)(3) required the Planning Board to mail a separate notice of the public hearing to "all owners of land for which a change in zoning is proposed in the Sectional Map Amendment[.]"

When § 27-225 and § 27-227 are read together, we interpret the language upon which the District Council relies in § 27-227(a) to mean that the District Council was not obligated to provide the full panoply of notice required by § 27-225(e). Section 27-227(c) imposes a much less burdensome notice requirement when a sectional map amendment is remanded to the Council.

51

the District Council's interpretation fails. That is, the District Council may not interpret its local code provisions in a manner that is inconsistent with the express provisions of the State enabling legislation. The *Bazzarre* remand required the District Council to undertake a proceeding involving the rezoning of property. 2017 WL 2334472, at *46. As we discussed in Parts I.A and B, the District Council has no plenary legislative authority to exercise planning and zoning powers in a manner inconsistent with the express authority granted by the General Assembly. Under Maryland's constitutional scheme, a local government's authority to regulate land use emanates exclusively from enabling legislation of the General Assembly. *Zimmer*, 444 Md. at 504. The RDA, by its clear and unambiguous terms, requires that the District Council conduct an advertised public hearing prior to rezoning property. Land Use Article § 22-206 expressly provides that: "A district council may amend its zoning laws, *including any maps*: (1) in accordance with procedures established in its zoning laws; and (2) *after holding an advertised public hearing*."[29] (Emphasis added).

---

[29] The corresponding statutory provision for the amendment of plans in Prince George's County, including area master plans, is LU § 21-216. The statute states, in pertinent part:

> (a)(1) After a public hearing, the district council shall establish by local law or subsequent amendment to the local law procedures for the Commission to initiate, submit, adopt, and amend a plan or part of a plan, and for the district council to approve or amend a plan or part of a plan.
> (2) The district council shall publish notice of the time and place of the public hearing in at least one newspaper of general circulation in the county at least 30 days before the hearing.
> (b) The procedures established in accordance with subsection (a) of this section shall:
> \* \* \*

52

Moreover, the *Bazzarre* remand order did not excuse the District Council from adhering to the notice and public hearing requirements in State and local laws. Indeed, it is notable that, after the second remand following the *Accokeek* judgment, the District Council understood the precise manner in which the remand proceeding should occur. As discussed above, the District Council entered a written order remanding the matter to its Planning Board *pursuant to* PGCC § 27-227(a) "for the purposes of meeting the affidavit requirements" of the State ethics laws, and for the Planning Board to resubmit its 2009 master plans and sectional map amendments for subregions 5 and 6 to the District Council for its consideration. In other words, the District Council understood, at the time of the *Accokeek* remand order, that it was to consider the 2009 SMA based upon the 2009 record, along with the updated affidavits required by the State public ethics laws, within the context of a public hearing held in accordance with PGCC § 27-227.

We agree with the Appellate Court that the District Council's work session was not the effective equivalent of a public hearing. *See Woodward & Lothrop, Inc.*, 280 Md. at 710 ("Properly to be inferred from a statutory right to a public hearing on a zoning map amendment application is a right to a fair hearing in all respects, including the privilege of introducing evidence and the duty of deciding in accordance with the evidence."); *see also Ford v. Balt. County*, 268 Md. 172, 187 (1973) ("A 'hearing' contemplates more than mere

---

(2) provide for one or more public hearings on the plan to be held jointly by the Commission and the district council, at the direction of the district council, after 30 days' notice by publication in a newspaper of general circulation in the county[.]

*attendance* by the public; it connotes a meeting which the public has the right to attend *and* the right to be *heard*." (quoting *In re Kurren's Appeal*, 417 Pa. 623, 630 (1965))).

To be sure, the *Bazzarre* remand order limited the District Council's consideration to the 2009 record and, therefore, no additional evidence could have been presented at the public hearing. That limitation notwithstanding, allowing the affected property owners to address the Council was not only required by law, but it was also critically important under the unique circumstances of this case. As the parties pointed out in their briefs, the composition of the District Council has changed since 2009—only one of the 11 current councilmembers was on the Council when the 2009 record was developed. Moreover, as the result of an intervening charter amendment, the 2019 Council had 11 members, whereas the 2009 Council had nine. Aside from the fact that an advertised public hearing was required under State and local laws, it was dictated by notions of fundamental fairness. Property owners who were parties to the litigation and subject to the remand order should have been permitted to explain why the 2009 SMA zoning should or should not have applied to their property based upon the record developed at that time and to provide the current members of the District Council with their respective positions on the zoning designation of their land.

Not only did the District Council fail to hold a public hearing, but the Council also gave the remand order short shrift at the brief work session. A property owner or third-party observer in attendance—or a court reviewing the cold record—would have no idea whether the current members of the District Council had any familiarity with the 2009 record. As noted above, the transcript of the entire work session for subregions 5 and 6

54

comprises 15 pages and 13 pages, respectively, including the vote roll call for each session. The entire work session contained only one reference to the 2009 record—when Chair Todd Turner, in the opening statement stated that the resolution was "based on the 2009 record." Only one councilmember—Councilmember Sydney Harrison—spoke during the work session. Councilman Harrison did not make any substantive comments, and he simply deferred to counsel.

Counsel's summary overview did not contain any suggestion that there was a dispute as to the appropriate zoning, nor was there any reference to the Property Owners' contentions. Even more conspicuously absent was any reference to MCQ's revisory petition, and the fact that the District Council had *granted it* after making an express finding of error in the 2009 record. We agree with the Appellate court that, "[i]n terms of fairly informing the members of the Council as to what were the actual issues confronting it, counsel's presentation was inadequate." *Robin Dale*, 263 Md. App. at 57 (footnote omitted).

Given that the Council members who voted on the 2019 Resolutions were not on the Council in 2009, it is important that the record reflected that they familiarized themselves with the matter by considering and appraising the records in question. *Cf. Younkin v. Boltz*, 241 Md. 339, 342–43 (1966). The record does not reflect that this occurred.

For all of the above reasons, we agree with the Appellate Court that the District Council erred when it enacted the 2019 Resolutions without holding a public hearing as required by both State and county laws.[30]

## V

## Conclusion

For these reasons, we hold that the District Council's countywide rezoning was not a comprehensive rezoning or a substantive change in the law with retroactive application that vitiated the District Council's obligation to comply with judicial directives entered in cases to which it was a party. The countywide rezoning was a mapping exercise intended to assign zoning classifications on a countywide scale that best aligned with the zoning districts in the new zoning ordinance. This technical process did not render moot the Property Owners' assertions of error that they raised below in connection with the District Council's 2019 work session in which their properties were downzoned.

The record of the District Council's 2019 work session reflects that the District Council failed to comply with provisions of State and local law, which required a public

---

[30] We agree with the Appellate Court's observations set forth in footnote 26 of its opinion. *Robin Dale*, 263 Md. App. at 41 n.26. The District Council is correct that PGCC § 27-227 authorizes, but does not require, the Council to employ the expedited process set forth in the code. However, the alternatives that might be otherwise available to the Council are inapplicable in this case. After a sectional map amendment is reversed, the Council ordinarily could decide to do nothing and therefore leave the previous sectional map amendment in place. However, the 2009 sectional map amendments were reversed as to the parties by the *Accokeek* judgment. Alternatively, the Council ordinarily could refer the proposed sectional map amendments back to the Planning Board for the Board to reconsider and even amend the proposed sectional map amendment. Here, as the Appellate Court noted, "referring the matter back to the Board would be an exercise in futility because the District Council's decision must be based on the 2009 record." *Id.*

hearing. The Property Owners were entitled to notice and an opportunity to be heard under both State and county laws prior to their properties being downzoned. With respect to MCQ, the 2019 proceeding failed to comply with the directive in *Bazzarre* that the District Council specifically consider the record of the revisory proceeding. We affirm the judgment of the Appellate Court. To avoid any confusion concerning the requirements on remand, we restate the remand instructions of the circuit court, as clarified by the Appellate Court, and with some additional clarifications of our own.

## VI

## Proceedings on Remand

We agree with the Appellate Court and the circuit court that the District Council's adoption of Council Resolutions CR-11-2019 and CR-12-2019 must be reversed and these cases remanded to the Council for it to address the merits of the Property Owners' contentions.[31] On remand:

1. The District Council's factual universe shall consist of the 2009 District Council record (including the record of MCQ's revisory petition), together with affidavits filed pursuant to GP § 5-835 and information that logically "arose from additional information gained from" the affidavits. *Bazzarre*, 2017 WL 2334472, at *35. Given the lapse of time, updated affidavits shall be obtained.

---

[31] To the extent that the Appellate Court granted relief to appellees Neale Drive and Robin Dale—entities which did not participate in the proceedings in this Court, our instructions are not intended to alter the remedies provided to those parties that are not before us.

2. The District Council shall comply with the requirements of LU § 22-206 by conducting an advertised public hearing with prior notice to any affected property owners. The purpose of the public hearing is not to receive any new evidence, but to provide any affected property owners with an opportunity to be heard on their contentions relating to the 2009 District Council record (and MCQ's revisory petition). Consistent with the Appellate Court's instructions in its *Bazzarre* opinion, MCQ is free to renew all of its revisory petition contentions.

3. Given the change in the composition of the members of the District Council between 2009 and the present, the record shall reflect that the District Council members familiarized themselves with the matter by considering and appraising the records in question in order to make an informed decision when voting on the matters before it.

4. After the notice and the public hearing, the District Council shall comply with the following instructions in the circuit court's order (the propriety of which were not challenged before the Appellate Court or this Court, and which are binding on the Council on remand), as follows:

   (a) That amendments to subregion 5 and subregion 6 are restricted to those that naturally arise from the affidavits and/or the correction of procedural errors, and

   (b) The record shall be clear, as to the basis of its decision as it arises from the unredacted 2009 record.

(c) The District Council shall "clarify its response to" MCQ's revisory petition. We agree with the Appellate Court that, as part of that clarification, the Council should address the degree to which the District Council is bound in the present action by the factual findings and ultimate conclusion reached by the Council in the revisory petition proceeding. *See Becker v. Falls Rd. Cmty. Ass'n*, 481 Md. 23, 47 (2022); *Garrity v. Md. State Bd. of Plumbing*, 447 Md. 359, 380 (2016); *Batson v. Shiflett*, 325 Md. 684, 701–03 (1992); *see also* Restatement (Second) of Judgments § 83 (1982).

**THE JUDGMENT OF THE APPELLATE COURT OF MARYLAND IS AFFIRMED; CASE IS REMANDED TO THE APPELLATE COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH INSTRUCTIONS TO REMAND THE CASE TO THE DISTRICT COUNCIL FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. PETITIONER TO PAY COSTS.**